UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN LYNETTE LAMBERT,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:22-cv-00174-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security partially denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 11 & 12. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 6. For the reasons provided below, plaintiff's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.

**I.     Background**

In June 2005, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and supplemental security income (SSI) under Title XVI

/////

1

of the Act, alleging disability beginning June 1, 2005.[1]  Administrative Record (AR) 246-254.  In a decision dated January 25, 2008, an ALJ found that plaintiff was disabled beginning June 1, 2005.  AR 105-112, 907.  On January 5, 2016, pursuant to a continuing disability review (CDR), the Commissioner determined that plaintiff was no longer disabled as of January 1, 2015, and that plaintiff's disability payments would end after March 2015.  AR 115-116, 907.

Plaintiff challenged the cessation of benefits in a federal action, *Lambert v. Comm'r of Soc. Sec.*, No. 2:18-cv-02122 CKD (affirming), and subsequently appealed to the Ninth Circuit, which vacated the district court's decision and remanded.  *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020).  The Ninth Circuit found that the ALJ did not sufficiently articulate the reasons for rejecting plaintiff's subjective symptom testimony, holding that "the ALJ may reject the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

2

claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so. This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and explain what evidence undermines that testimony."). *Id.* at 1277 (internal citations and quotation marks omitted).

On remand, the Appeals Council directed the ALJ to consolidate plaintiff's 2015 CDR appeal with subsequent claims she filed in 2018 and 2019. AR 1062. On remand, the ALJ held a telephonic hearing on November 9, 2021, at which plaintiff was represented by counsel. AR 933-956. Plaintiff's daughter Rhonda Chavez testified at the hearing, as did vocational expert (VE) Heidi Paul. AR 947-955. On December 27, 2021, the ALJ issued a partially favorable decision, concluding that plaintiff's disability ended on January 1, 2015, but that she became disabled again on December 8, 2015 and continued to be disabled through the date of the decision. AR 922.

Plaintiff challenges the 2021 decision, in which the ALJ made the following findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated January 25, 2008. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: rheumatoid arthritis. This impairment was found to result in the residual functional capacity to perform sedentary work except she is unable to perform more than occasional standing or walking, use her hands to handle or her upper extremities to reach or push/pull.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity.

4. The medical evidence establishes that, since January 1, 2015, the claimant has had the following medically determinable impairments: rheumatoid arthritis; bilateral calcaneal spurs and right Achilles tendinopathy; degenerative disc disease of the cervical spine and lumbar spine; obesity; Graves' disease; depression; and anxiety. These are the claimant's current impairments.

5. Since January 1, 2015, the claimant has not had an impairment or combination of impairments which meets or medically equaled the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

6. Medical improvement occurred on January 1, 2015.[2]

---

[2] The ALJ explained: "The medical evidence supports a finding that, by January 1, 2015, there had been a decrease in medical severity of the impairment present at the time of the CPD.

3

7. Since January 1, 2015, the impairment present at the time of the CPD has decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work except: lift and/or carry 10 pounds occasionally; only occasional stooping, kneeling, crouching, crawling, and climbing stairs; must avoid hazards such as unprotected heights and dangerous, moving machinery; avoid cold temperatures; and frequent, not constant, handling and fingering.

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity.[3]

9. Since January 1, 2015, the claimant has continued to have a severe impairment or combination of impairments.

10. Based on the impairments present since January 1, 2015, the claimant has had the [RFC] to perform light work except as follows: stand and/or walk a maximum of 2 hours; lift and/or carry 10 pounds occasionally; only occasional stooping, kneeling, crouching, crawling, and climbing stairs; must avoid hazards such as unprotected heights and dangerous, moving machinery; avoid cold temperatures; and frequent, not constant, handling and fingering.

11. The claimant has no past relevant work.

12. Prior to the disability cessation date, the claimant was a younger individual age 45-49. On December 8, 2015, the claimant's age category changed to an individual closely approaching advanced age.

13. The claimant has at least a high school education.

14. Transferability of job skills is not an issue because the claimant does not have past relevant work.

15. Prior to December 8, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since January 1, 2015, the claimant has been able to perform a significant number of jobs in the national economy.

16. The claimant's disability ended on January 1, 2015, and the claimant continued to not be disabled through December 7, 2015.

---

A review of the medical evidence of record since January 1, 2015 reflects that though the claimant continued to suffer from rheumatoid arthritis, her symptoms were amenable to improvement with prescribed treatment with adjustments to medications as needed. Accordingly, by January 1, 2015, the claimant's impairment at the time of the CPD—rheumatoid arthritis—was no longer so bad that it limited the claimant to sedentary work with only occasional use of her hands to handle or her upper extremities to reach or push/pull." AR 912 (record citations omitted).

[3] The ALJ clarified: "Notably, since January 1, 2015, the claimant has been capable of frequent, not constant, handling and fingering." AR 913.

> 17. Beginning on December 8, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform.
>
> 18. The claimant was not disabled from January 1, 2015 through December 7, 2015 but became disabled on December 8, 2015 and has continued to be disabled through the date of this decision.

AR 907-921.

The gravamen of the complaint before the court is that the ALJ erred in finding plaintiff not disabled between January 1, 2015 and December 7, 2015, before her age category changed and she was deemed disabled from that time forward.

## II.     Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

////

////

### III. Claims

Plaintiff claims the ALJ committed the following errors: (1) the ALJ's finding of medical improvement as of January 1, 2015 is not supported by substantial evidence: (2) the ALJ did not set forth legally sufficient reasons for discounting plaintiff's subjective symptom testimony; (3) the assessed residual functional capacity (RFC) for light work is not supported by substantial evidence; and (4) the ALJ improperly relied on VE testimony to support an RFC for light work.

### IV. Analysis

#### A. Credibility

Because plaintiff challenges the ALJ's decision with respect to the period between January and December 2015, a roughly one-year window, the court will focus on that period. Any error in the ALJ's findings about plaintiff's post-2015 condition is harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error.").

Plaintiff claims that the ALJ failed to set forth clear and convincing reasons to discredit her statements about pain and swelling in her hands and wrists that made it difficult to grasp objects; swelling in her feet that limited her ability to stand, walk and sit; and fatigue. Plaintiff further claims the ALJ erred in failing to evaluate the testimony of plaintiff's daughter, who testified about plaintiff's condition from 2015 onward at the November 2021 hearing.

The ALJ summarized plaintiff's and her daughter's testimony as follows:

> The claimant testified she last worked in 2005 for Walmart. The claimant denied working since that time. She reported she lived with her adult daughter who helped her with household chores and driving. The claimant alleged she could not drive for long periods of time.
>
> According to the claimant, she was unable to work due to swelling and pain in the hands and wrists. She endorsed difficulty grasping and dropping objects. The claimant also reported inability to work due to feet swell from standing, walking, and sitting. She indicated she elevated her legs throughout the day due to swelling. The claimant also complained of neck injury with pain and swelling all day long. The claimant contended she spent her day lying down. In terms of treatment, the claimant reported she took various pain medications.

/////

> The claimant's 19-year-old daughter testified due to the claimant's impairments she did most of the housework and helped her mother change clothes and bathe. The claimant's daughter added the claimant's condition had worsened since 2015. She stated the claimant did not walk outside much unless using a walker.

AR 915; *see* AR 940-946, 952-955 (hearing testimony).

The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." AR 914.

The ALJ then proceeded to summarize the medical and opinion evidence, but failed to "specifically identify the testimony . . . he finds not to be credible and explain what evidence undermines that testimony" as instructed by the Ninth Circuit in *Lambert*. *See* 980 F.3d at 1277. While Ninth Circuit "precedent does not require ALJs to perform a line-by-line exegesis of the claimant's testimony[,] . . . the ALJ's detailed overview of [the claimant's] medical history— coupled with a nonspecific boilerplate conclusion that her testimony was 'not entirely consistent' with her medical treatment—[is] not enough to satisfy the minimal requirements for assessing credibility." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (quoting *Lambert*, 980 F.3d at 1277) (internal quotation marks omitted).

The ALJ also erred in failing to evaluate the testimony of plaintiff's daughter Rhonda Chavez. After summarizing her statements, he did not mention them again. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

Defendant concedes that the ALJ erred in evaluating plaintiff's subjective statements. Defendant's proposed solution is to remand this case to the agency for further proceedings "so that an ALJ may re-evaluate Plaintiff's testimony." (ECF No. 12 at 16.) Plaintiff counters that

the record is fully developed with respect to 2015, the year at issue, and that, under the credit-as-true rule, this case should be remanded for payment of benefits for that period.[4]

B. Remedy

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

As to the first factor in crediting plaintiff's statements as true, the record in this case has been fully developed as to plaintiff's condition in 2015. To be sure, as defendant points out, little of plaintiff's testimony at the 2021 hearing focused on the 2015 time period. Plaintiff testified that her daughter had been doing "the sweeping, the mopping, the vacuuming, the dishes, [and] the cooking" since 2015. AR 945. Plaintiff testified that, at that time, she could load dishes in the dishwasher, but her condition had gotten "a lot worse" in 2017. AR 945. Plaintiff's daughter

/////

---

[4] The court does not reach the remaining claims.

testified that plaintiff's limitations in using her hands and feet had gotten worse since 2015, when she had been able to load the dishwasher, but "[n]ow, she can't even load a dish." AR 955.

In June 2014, however, plaintiff filled out a Continuing Disability Review Report in which she stated that: it was difficult to walk due to foot pain; standing was difficult and painful; she could not lift more than five pounds; using her arms, hands, and fingers was very painful; and she could only sit for up to one hour. AR 306. As to completing tasks, she stated that it took her all day to clean house due to pain. AR 306. "There are some days where my hands are stiff and swollen that [makes] it very hard to hold the dishes, sweep, mop, etc." AR 307. She reported "constant pain in [her] feet" made worse by standing or walking for a long period of time. AR 307. Sitting for long periods of time made her feet stiffen up and swell. AR 307. When she tried to complete a task, "the pain in my feet and hands gets so bad I have to stop doing the task." AR 307. This record, created six months from the start of the relevant period on January 1, 2015, is a better source of plaintiff's self-described symptoms in 2015 than asking her about them eight years later in 2023, as defendant proposes. Given the voluminous record in this case, including two hearings and a detailed rundown of plaintiff's alleged symptoms six months before the relevant period, the court finds the record to be fully developed as to the time period at issue, such that further administrative proceedings would serve no useful purpose.

As to the second factor in crediting plaintiff's testimony as true, defendant concedes that the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's statements under the legal standard spelled out by the Ninth Circuit in 2020—ironically, in plaintiff's own case.

The third factor is whether, if plaintiff's subjective statements about her symptoms in 2015 were credited as true, the ALJ would be required to find her disabled on remand. The ALJ found that, as of January 1, 2015, plaintiff had the RFC "to perform light work except as follows: stand and/or walk a maximum of 2 hours; lift and/or carry 10 pounds occasionally; only occasional stooping, kneeling, crouching, crawling, and climbing stairs; . . . and frequent, not constant, handling and fingering." AR 913. The ALJ found that plaintiff's RFC had increased from her pre-January 2015 RFC due to medical improvement, specifically: "since January 1, 2015, the claimant has been capable of frequent, not constant, handling and fingering." AR 913.

When the ALJ questioned the VE about available jobs for someone with plaintiff's limitations, he asked "[w]hat, if any, sedentary occupations in the national or regional economies might [a] hypothetical individual be able to perform" with plaintiff's assessed RFC, including limitations to frequent handling and fingering and standing and walking for a maximum of two hours. AR 947-948. The VE responded that such an individual could perform three representative occupations—food and beverage order clerk, charge account clerk, and call out operator—all classified as sedentary and unskilled. AR 948-949. Despite an assessed RFC for light work, the ALJ effectively found that plaintiff could only perform sedentary work in 2015, writing in his decision: "[A]lthough the residual functional capacity adopted herein is for work at the light exertional level, the vocational expert testified that given the adopted function-by-function limitations, only sedentary jobs would remain." AR 921. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." Code of Federal Regulations § 404.1567(a). The ALJ relied on the VE's testimony to conclude that plaintiff could have performed the three identified sedentary jobs in 2015, and therefore was not disabled. AR 920-921.

The VE also testified that, if someone with plaintiff's functional limitations, and limited to sedentary work, could only perform *occasional* handling and fingering, only one job would be available: call-out operator. AR 950. Under questioning by plaintiff's counsel, the VE further testified that, if someone with plaintiff's functional limitations was limited to "less than occasional handling and grasping, . . . say, two hours in an eight-hour workday," plaintiff could not perform the job of call-out operator. AR 951.

Had the ALJ credited plaintiff's statements about her symptoms in 2015, including an inability to lift more than five pounds, difficulty sitting for more than one hour, difficulty standing and walking due to pain, and inability to complete tasks due to pain in her hands and feet, she would not have been able to perform the requirements of the jobs identified by the VE, and the

/////

ALJ would have been required to find her disabled in 2015.  Thus, the court will remand for immediate payment of benefits for that period.

V.      **Order**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 12) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits for the period of January 1, 2015 to December 7, 2015; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: March 24, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE